[Cite as *Buck v. Buck*, 2018-Ohio-3704.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

Mark S. Buck

    Appellee/Cross-Appellant

v.

Janet Yackee Buck

    Appellant/Cross-Appellee

Court of Appeals No. F-17-012

Trial Court No. 15DV000181

**DECISION AND JUDGMENT**

Decided: September 14, 2018

* * * * *

Charles M. Saunders and Gregory L. VanGunten, for appellee/
cross-appellant

Colin J. McQuade, for appellant/cross-appellee.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal from a judgment of the Fulton County Court of Common

Pleas which granted the parties a divorce and determined the marital property

classification, the division of marital property, spousal support, and attorney fees. For the

reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} On November 25, 2015, appellee/cross-appellant Mark S. Buck (hereafter plaintiff or "Mr. Buck") filed a complaint for divorce against appellant/cross-appellee Janet Yackee Buck (hereafter defendant or "Mrs. Buck") after over 30 years of marriage. The parties were married on August 31, 1985, and separated in late November 2012. Following a period of discovery and mediation, a final hearing was held on July 18, 2016. On August 19, 2016, the parties filed post-hearing "final arguments" along with a total of 38 joint stipulations and agreements. Unresolved and contested divorce matters were decided by the magistrate on March 20, 2017, who recommended "Plaintiff should be granted an absolute Divorce from Defendant, and that the Parties are released from the obligations of that marriage except as identified below." Each party filed objections to the magistrate's decision, and as journalized on December 18, 2017, the trial court filed a decision and judgment entry overruling the objections and granting the divorce due to incompatibility.

{¶ 3} Mrs. Buck sets forth four assignments of error:

I. The trial court erred when it stated a "de nova review" of the magistrate's analysis of the [$3,000.00] monthly gifts from appellant's mother when no such analysis took place.

II. The [trial] court erred when it blended the issues of division of marital property and spousal support.

III. The trial court erred when it inequitably divided the marital accounts 65% to appellee and 35% to appellant and is an abuse of discretion.

2.

IV.  The trial court erred when it limited appellant's attorney fee award to $5,000.00 and [is] an abuse of discretion.

{¶ 4} Mr. Buck sets forth three assignments of error in his cross-appeal:

I.  As a matter of law, the trial court erred concerning its application of the [parol] evidence rule to the parties' settlement agreement and its interpretation of [its] integration clause.

II.  The trial court erred by finding that the money remaining in the parties' managed account was "marital" property and divided it 65% to Mr. Buck and 35% to Mrs. Buck.

III.  The trial court's decision to award Mrs. Buck attorney fees is against the manifest weight of the evidence, not supported by equity, and contrary to law.

{¶ 5} We will address the assignments of error out of order.

**A.  Marital Property Determination**

{¶ 6} Both parties argue the trial court erred when it determined what constituted marital property.  Neither party disputes in a divorce proceeding the trial court is required to determine what constitutes marital property and separate property.  R.C. 3105.171(B).

{¶ 7} "Marital property" is not "separate property."  R.C. 3105.171(A)(3)(b). Rather, "marital property" includes:

All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of

3.

the spouses, and that was acquired by either or both of the spouses during

the marriage.

R.C. 3105.171(A)(3)(a)(i).

{¶ 8} In contrast, "separate property" is defined as "all real and personal property

and any interest in real or personal property that is found by the court to be any of the

following," including:

Compensation to a spouse for the spouse's personal injury, except

for loss of marital earnings and compensation for expenses paid from

marital assets [R.C. 3105.171(A)(6)(a)(vi); or] Any gift of any real or

personal property or of an interest in real or personal property that is made

after the date of the marriage and that is proven by clear and convincing

evidence to have been given to only one spouse [R.C.

3105.171(A)(6)(a)(vii)].

Moreover, "[t]he commingling of separate property with other property of any

type does not destroy the identity of the separate property as separate property,

except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

{¶ 9} We review a trial court's factual findings on the classification of marital and

separate property pursuant to R.C. 3105.171 under a manifest weight of the evidence

standard. *Okos v. Okos*, 137 Ohio App.3d 563, 569, 739 N.E.2d 368 (6th Dist.2000),

citing *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (4th Dist.1997).

Consequently, we will not reverse the trial court's decision if it is supported by some

4.

competent and credible evidence. *Hook v. Hook*, 189 Ohio App.3d 440, 2010-Ohio-4165, 938 N.E.2d 1094, ¶ 18 (6th Dist.), citing *Schober v. Schober*, 6th Dist. Ottawa No. OT-08-061, 2009-Ohio-4408, ¶ 27.

{¶ 10} Overcoming the presumption pursuant to R.C. 3105.171(A)(3)(a) that property acquired during the marriage is marital property requires "clear and convincing evidence," meaning "that degree of proof which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Hook* at ¶ 19, quoting *Barkley* at 168. "Clear and convincing evidence" is more than a mere preponderance of the evidence but less than the certainty required for "beyond a reasonable doubt" in criminal cases. *State ex rel. Cincinnati Enquirer v. Deters*, 148 Ohio St.3d 595, 2016-Ohio-8195, 71 N.E.3d 1076, ¶ 19, citing *Cross v. Ledford*, 161 Ohio St. 469, 471, 120 N.E.2d 118 (1954), paragraph three of the syllabus. We will not reweigh the evidence introduced to the trial court; rather, we will uphold the findings of the trial court if the record contains some competent, credible evidence to support the trial court's conclusions. *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 468, 628 N.E.2d 1343 (1994), citing *Ross v. Ross*, 64 Ohio St.2d 203, 204, 414 N.E.2d 426 (1980).

{¶ 11} Mr. Buck, a construction worker, was injured as a result of a crane collapse accident on February 16, 2004, that occurred during the construction of the "Veteran's Bridge" in Toledo. Thereafter, the parties entered into a "Confidential Settlement Agreement" with Mr. Buck's employer that resulted in a settlement award payment. The record contains the settlement agreement dated January 21, 2005, which the parties

5.

entered into during their marriage. After various deductions the net of $692,592.40 was paid "to Mark S. Buck and Janet Yackee Buck JTWROS (Joint Tenants with Right to Survivorship)" into an account at Smith Barney.

{¶ 12} The record refers to the original account into which the net settlement award was deposited as the "settlement account," and, later, the "joint money market account" or "joint money market checking account." In late 2005, the parties agreed to open with Smith Barney a new, joint, professionally managed account (also titled "Mark S. Buck and Janet Yackee Buck JTWROS") "with more long-term investments" and withdrew $300,000 from the "joint money market account" and deposited that sum into the professionally managed account. The record refers to this second account into which approximately one-half of the net settlement award was deposited as the "managed account" or "joint managed account." Later, the parties transferred the "joint money market account" from Smith Barney to Morgan Stanley (identified in the record as account No. ending 1965), and they also transferred the "managed account" from Smith Barney to Morgan Stanley (identified in the record as account No. ending 2336).

{¶ 13} The parties received the settlement award after they jointly signed the settlement agreement, which broadly describes the release of claims by both parties as including:

> any and all past, present and future claims, and potential claims,
> demands, damages, actions * * * losses, * * * and causes of action of
> whatsoever kind or nature, whether known or unknown, which are now

6.

existing or might arise in the future, specifically including claims of * * * survivorship, loss of consortium, loss of services, medical expenses, * * * lost wages, lost earning capacity * * * and other expenses or damages, incurred or to be incurred, known or unknown, which arise out of or are related in any way to the February 16, 2004 accident * * * and BUCK's employment with FCC.

{¶ 14} The magistrate found the settlement agreement contained no dollar amount for each individual type of claim that was resolved, and, other than pointing to paragraph two of the settlement agreement, Mr. Buck "did not present any evidence whatsoever" to trace the settlement award entirely to "Plaintiff's medical expenses, future medical expenses, loss of income, or future lost wages" to the exclusion of Mrs. Buck's "claim of loss of consortium, [and] loss of services." The record contained testimony that after the accident Mrs. Buck, a registered nurse, became Mr. Buck's full-time nurse at home, eliminating the need for Mr. Buck "to hire any outside nursing assistants to care for [his] physical injuries." The record also contained testimony that Mrs. Buck continued to stay at home even after their child became a teenager, and that Mr. Buck did not work again in construction, although he started a snow plow business.

{¶ 15} In the trial court's December 18, 2017 judgment entry, the trial court agreed with the magistrate's analysis and determined the settlement award was made as a settlement to the parties "listed as a *single party* to the contract" (emphasis sic) and "consisted of claims for personal injuries (non-marital property) and lost income,

7.

companionship, etc. (marital property)."  The trial court concluded "the Magistrate correctly determined the Morgan Stanley account to be a marital asset."  The trial court previously explained the "Morgan Stanley account" was the former Smith Barney "settlement account" into which the parties' were paid the original net settlement award.

{¶ 16} In support of his first and second assignments of error, Mr. Buck argues paragraph two of the settlement agreement is clear that the entire settlement award is his separate property solely for his "physical injuries and illness" pursuant to R.C. 3105.171(A)(6)(a)(vi), and Mrs. Buck "did not dispute the actual tracing of the settlement money back to the Settlement Agreement."  In addition, he argues:

> Stipulation #17 of the parties acknowledged that "(n)o 'marital funds' were deposited into this managed account in the following years thereafter right up to the present."  Here, there was no "transmutation" of the settlement funds into other marital assets, and no co-mingling of other marital assets with the settlement account.  The tracing here is untainted and documented back to the settlement release. * * * Here, the tracing is very simple and unaltered.

{¶ 17} The parties to the settlement agreement are Mr. Buck, Mrs. Buck and Fru-Con Construction Corporation, Mr. Buck's employer on the date of the accident. Paragraph two of the settlement agreement states, "Per communication from Bucks' counsel" the check was "made payable to 'Mark and Janet Buck, and Eastman & Smith, Ltd., their attorneys.'"  That settlement award "constitute[s] damages on account of

8.

physical injuries or illness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended, and are paid to fully end all possible litigation by and between [Mark Buck and Janet Buck] and [Fru-Con Construction Corporation]." We are unpersuaded by Mr. Buck's argument because the express language of paragraph two of the settlement agreement used the phrase "physical injuries or illness" solely to be defined for the purpose of IRS income tax consequences of the settlement award, which is not an issue appealed by either party.

{¶ 18} Mr. Buck further argues Mrs. Buck testified in her deposition she did not suffer physical injuries or illness as a result of Mr. Buck's accident. Mr. Buck believed since he meet his burden by a preponderance of the evidence to trace the "marital funds" to his separate property for personal injury, the burden then shifted to Mrs. Buck "to produce the evidence to back up [her marital property] claims." We are unpersuaded Mr. Buck met his burden by clear and convincing evidence to overcome the marital property presumption because the settlement award was acquired by both spouses during the marriage. It is undisputed both parties signed the settlement agreement during their marriage that resulted in the settlement award being deposited as a lump sum into a joint money market account with a right of survivorship for full access by both parties. R.C. 3105.171(A)(2)(a). We find paragraph two of the settlement agreement alone did not satisfy the requirements under R.C. 3105.171(A)(6)(a)(vi). We find the comingling of both parties' claims in the lump sum settlement award is not traceable to Mr. Buck's exclusive separate property. R.C. 3105.171(A)(6)(b). We find the record also contains

9.

some evidence Mrs. Buck received a later diagnosis of depression that was considered a result of Mr. Buck's accident and her full-time care for him.

{¶ 19} The record also shows Mrs. Buck testified at the July 18, 2016 hearing that although both parties had equal control over the two settlement award accounts, she was the one responsible for handling the family's finances.

It was always family money from the beginning. It was both of ours. * * * It was just assumed that it was our money. We used it to live on. We used it for our family. * * * Because it was always in both of our names. We used it to live off of. I used that money to pay all our bills for ten years.

{¶ 20} Mr. Buck further argues the trial court improperly considered "Defendant's Exhibit A" as "supplemental evidence of what the settlement *really* encompassed." (Emphasis sic.) The result is "the odd proposition that some signatories to contracts are bound by the [Parol] Evidence Rule while others are not." Mr. Buck argues the trial court erred as a matter of law applying the parol evidence rule to the settlement agreement, specifically the integration clause, because the rule "forbids such testimonial evidence [by Mr. Buck on cross-examination about his 'understanding' of the settlement agreement] in contradiction of the terms of the release itself."

{¶ 21} Mr. Buck testified at the final hearing that although he viewed the settlement award as entirely to take care of him "years down the road if I have complications of whatever reason because of the [thirteen percent permanent foot]

10.

disability that I have," he acknowledged the settlement award was split partly "to accommodate and help us pay bills since I couldn't generate money to pay" and partly "into a fund to be able to build wealth for later on in my years when I was more so not going to be able to take care of myself and possibly have to buy it for myself." Mr. Buck admitted placing the settlement award in a joint account "was a matter of convenience to put it in both of our names" so that bills could get paid. Mr. Buck further testified that although his "plan was never for the family to live off the settlement account," he admitted, "That is the way it turned out * * * because my wife refused to go back to work." It is undisputed the record shows neither party worked, and they both lived off the "settlement account."

{¶ 22} We find Mr. Buck's reliance on the parol evidence rule and on paragraph 17 of the stipulations to be misplaced as the trial court found some competent and credible evidence in the settlement agreement and the stipulations, outside of the disputed defendant's exhibit A, to support finding the settlement award was marital property. The trial court agreed with Mr. Buck regarding the parol evidence rule as applied to the settlement agreement, but still disagreed with Mr. Buck the settlement award was not marital property.

{¶ 23} According to the trial court, "There is no way to determine the source of the dollars which were paid to support the Parties' ongoing expenses and sometimes exorbitant lifestyle." We will not disturb the trial court's finding the settlement award was marital property from all of the evidence in the record. The trial court also found

11.

approximately half of the net settlement award ($300,000 out of $692,592.40) funded the "managed account" and the rest remained in the "joint money market account." We find paragraph 17 regarding the "managed account" is consistent with the trial court's finding the settlement award was marital property. Mr. Buck testified at the July 18, 2016 hearing "what is in the managed account now at Morgan Stanley is directly traceable all the way to the settlement." The record shows the "managed account" was a passive investment account and earned interest and dividends that were reinvested into the $300,000 deposit from the net settlement award. Paragraph 24 of the stipulations states as of December 31, 2012, the "managed account" contained $327,473.75, and by July 12, 2016, the "managed account" contained $390,336.12.

{¶ 24} We find the trial court's determination the "settlement account," which resulted in the "joint money market account" and the "managed account," was marital property was not against the manifest weight of the evidence because its determination was supported by some competent and credible evidence in the record.

{¶ 25} Mr. Buck's first and second assignments of error are not well-taken.

{¶ 26} Mrs. Buck's first assignment of error challenging the classification of her mother's cash gifts as marital property mirrors her objection Nos. 2, 3 and 5 timely filed April 20, 2017, in response to the magistrate's March 20, 2017 decision. Mrs. Buck argues the trial court failed to conduct a de novo review of the magistrate's determination the $3,000 monthly gifts were marital property because the balance in the "joint money market checking account" can be directly traced to the gifts from mother to daughter.

12.

**{¶ 27}** We find paragraphs 17, 21, 30, 35, and 36 of the August 19, 2016 stipulations directly relate to the cash gifts from Mrs. Buck's mother during the parties' marriage. These cash gifts either were directly deposited into the "joint money market account," totaling $392,000 (of which $267,000 derived from $3,000 monthly gifts), or directly paid on joint credit card debt, totaling $49,975.08. According to paragraphs 19 and 24 of the stipulations, the parties paid all their obligations and living expenses by withdrawals from the "joint money market account," and at the time of filing of divorce the account balance was "approximately $6,678.27." The issue of credit card debt was not appealed.

**{¶ 28}** Where a party timely files objections to a magistrate's decision the trial court is required to rule on the objections after "an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). This "independent review" is the equivalent of a de novo determination. *Barker v. Barker*, 6th Dist. Lucas No. L-00-1346, 2001 Ohio App. LEXIS 2012, *9 (May 4, 2001), citing *DeSantis v. Soller*, 70 Ohio App.3d 226, 232, 590 N.E.2d 886 (10th Dist.1990).

**{¶ 29}** According to the trial court's December 18, 2017 judgment entry, the trial court analyzed Mrs. Buck's objection Nos. 2, 3 and 5 as follows:

> Neither of these Parties worked. They chose instead to live off the proceeds of the personal injury settlement and the largess of Defendant's mother. They lived well beyond their means. Defendant's mother made

$3000.00 a month available to Defendant each month. The Defendant deposited the $3000 monthly transfers from her mother (who was in a nursing home) into a joint account where the sums were co-mingled with the funds from the personal injury settlement. There is no way to determine the source of the dollars which were paid to support the Parties' ongoing expenses and sometimes exorbitant lifestyle. If the Defendant objected to the use of these funds, she could have chosen to have the $3000 transfers from her mother terminated at any point in time; or placed * * * the funds in a separate account completely under her control. She did not. * * * Both of these Parties deposited their money into a common fund which was utilized by both Parties for their personal benefit. That is the simple truth which cannot be ignored – and which this Court will not ignore. The Court reviewed the Magistrate's analysis of the Court's treatment of the $3000 monthly transfers. A de novo review indicates that the Magistrate was correct in his analysis. As a result, Defendant's * * * Objections are overruled and DENIED. (Emphasis sic.)

{¶ 30} We find the trial court conducted a de novo review of the objections and found some competent and credible evidence in the record to support denying the objections and finding the cash gifts deposited from Mrs. Buck's mother into the "joint money market account" during the marriage were marital property. The trial court's

determination these gifts were marital property was not against the manifest weight of the evidence.

{¶ 31} Mrs. Buck's first assignment of error is not well-taken.

## B. Marital Property Division

{¶ 32} Both parties argue the trial court abused its discretion when it divided their marital property. Mrs. Buck argues in her third assignment of error, and Mr. Buck further argues in his second assignment of error, the trial court abused its discretion when it inequitably divided the marital property 65 percent to Mr. Buck and 35 percent to Mrs. Buck. Mrs. Buck argues "the division is speculative and contrary to the findings of the Magistrate and applicable case law" because her mother's gifts into the "joint money market account" totaling $267,000 should be credited in Mrs. Buck's favor where Mr. Buck admits that without such support, "they would have substantially drained all of the accounts from his injury." Mr. Buck separately argues the trial court "engaged in mere speculation in its allocation of the managed account."

{¶ 33} In a divorce proceeding the trial court is required to divide the marital and separate property equitably between the spouses. R.C. 3105.171(B). "Trial courts are vested with broad discretion in determining the appropriate scope of these property awards." *Everhardt v. Everhardt*, 6th Dist. Lucas No. L-86-060, 1987 Ohio App. LEXIS 5892, *5 (Feb. 6, 1987), citing *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982).

15.

**{¶ 34}** The statute for division of marital property states, in part:

> Except as provided in this division * * *, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.

R.C. 3105.171(C)(1). The ten factors the trial court must consider when "making a division of marital property and in determining whether to make and the amount of any distributive award" are listed in R.C. 3101.171(F):

> (1) The duration of the marriage;
>
> (2) The assets and liabilities of the spouses;
>
> (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
>
> (4) The liquidity of the property to be distributed;
>
> (5) The economic desirability of retaining intact an asset or an interest in an asset;
>
> (6) The tax consequences of the property division upon the respective awards to be made to each spouse;

16.

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 35} We review the trial court's division of marital and separate property for an abuse of discretion. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990), citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989). Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "An unequal property division does not, standing alone, amount to an abuse of discretion." *Enriquez v. Enriquez*, 6th Dist. Lucas No. L-94-252, 1995 Ohio App. LEXIS 5362, *18 (Dec. 8, 1995), citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 352, 421 N.E.2d 1293 (1981), paragraph two of the syllabus.

{¶ 36} After determining the "settlement account," which resulted in the "joint money market account" and the "managed account," was marital property, the magistrate

then reasoned, and the trial court agreed, that an absolutely equal division of the marital funds pursuant to R.C. 3105.171(C)(1) and (F) "would be inequitable to [Mr. Buck]." The magistrate further reasoned, "While it is true he certainly combined the funds in such a way as it is impossible to say what funds were separate and what funds were marital property, it is also true that these funds were as a result of injuries that he sustained." The magistrate cited as support Mr. Buck's limited employment prospects as "unlikely that he will ever have substantial earnings in the future" and Mrs. Buck's "maintaining her nursing license, and most likely could enter back into the work force for a period of time." The magistrate then determined the equitable division of the "marital fund" would be 65 percent to Mr. Buck and 35 percent to Mrs. Buck. The trial court determined, after independently reviewing R.C. 3105.171(C)(1) and (F), "the Magistrate properly considered those provisions and concurs with the analysis provided with the Magistrate's Decision."

{¶ 37} The record also contains the trial court's judgment entry of "Temporary Orders," journalized January 13, 2016, in which the parties agreed on joint access to, and withdrawals from, the "managed account" after the divorce filing. The parties agreed, and the trial court ordered, those "withdrawals shall be credited as an adjustment to whatever sums the court may grant each party at final hearing." Upon determining the 65 percent to 35 percent division of the net settlement award, the trial court then determined in its December 18, 2017 judgment entry that for the period from December 1, 2015, to March 1, 2017, each party received $48,000 from the "managed account" according to

18.

the temporary orders. The trial court then granted to Mr. Buck a 65 percent credit for his share of the $48,000 received from the "managed account" and to Mrs. Buck a 35 percent credit for her share of the $48,000 received. We find the trial court's determination of the credits from the "managed account" withdrawals to the parties' final property division determination was in accordance with the parties' request.

{¶ 38} We reviewed the entire record and do not find the court's attitude was unreasonable, arbitrary or unconscionable in its evaluation of R.C. 3105.171(C)(1) and (F) before determining the division of the parties' marital property. In particular, we find it was within the trial court's discretion to consider "[a]ny other factor that the court expressly finds to be relevant and equitable" when making a division of marital property under 3105.171(F)(10). We find the trial court did not abuse its discretion when it denied the objections and divided the marital property 65 percent to Mr. Buck and 35 percent to Mrs. Buck.

{¶ 39} Mrs. Buck's third assignment of error and Mr. Buck's second assignment of error are not well-taken.

### C. Spousal Support

{¶ 40} Mrs. Buck argues in her second assignment of error the trial court committed "clear error" when the trial court "inferred" jurisdiction to determine the parties' spousal support stipulation and determined the relative earning capacities of the parties. In doing so, Mrs. Buck argues the trial court abused its discretion when it blended the issues of division of marital property and spousal support.

19.

{¶ 41} We review the trial court's determination of spousal support for an abuse of discretion. *Kunkle*, 51 Ohio St.3d at 67, 554 N.E.2d 83. The trial court has discretion to award spousal support to either party only after the trial court determines division of marital property pursuant to R.C. 3105.171 and "upon the request of either party" in divorce proceedings. R.C. 3105.18(B). The trial court's December 18, 2017 judgment entry ordered, "Neither Party shall pay or receive any spousal support in this matter. The Court shall not retain jurisdiction over this issue." As previously shown, the trial court incorporated the stipulations and agreements of the parties filed on August 19, 2016. Paragraph 6 of the stipulations states, "Neither party shall pay nor receive any spousal support and the court does not reserve jurisdiction in this matter." We find the trial court order mirrored what the parties previously stipulated.

{¶ 42} We find the trial court did not abuse its discretion when it denied the objections and ordered neither party shall pay or receive spousal support.

{¶ 43} Mrs. Buck's second assignment of error is not well-taken.

### D. Attorney Fee Award

{¶ 44} Both parties argue the trial court erred when it awarded attorney fees to Mrs. Buck. Mrs. Buck argues in her fourth assignment of error the trial court abused its discretion when it limited her attorney fee award to $5,000. In support, Mrs. Buck argues her evidence of attorney fees reflects two years of litigation "largely to address appellee's continuing contention that the 'managed' account funds are all his." Mrs. Buck further

20.

argues she and her attorney "spent countless hours reconstructing the financial history of the parties, and most of appellee's exhibits were prepared by appellant."

{¶ 45} Mr. Buck argues in his third assignment of error any attorney fees award to Mrs. Buck "is against the manifest weight of the evidence, not supported by equity, and contrary to law" because each party should pay their own attorney fees and one-half of the court costs. In support, Mr. Buck argues the magistrate wrongly stated he made obtaining information difficult because he had roughly equal attorney fees, and his counsel "prepared the extensive written Stipulations in the Appendix so as to narrow the issues at trial" and timely responded to all discovery requests. Mr. Buck concedes the "reason this case went to trial was a disagreement between counsel as to whether the residue in the managed account was marital or separate." Mr. Buck maintains the record supports his claim the "disputed account is Mr. Buck's separate property under R.C. 3105.171(A)(6)(a)(vi)."

{¶ 46} The relevant statute for an award of attorney's fees and litigation expenses in a divorce action is R.C. 3105.73(A), which states:

> In an action for divorce * * *, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

21.

**{¶ 47}** We review an award or denial of attorney fees in domestic relations actions pursuant to R.C. 3105.73 for an abuse of discretion. *Davis v. Davis*, 2016-Ohio-1388, 62 N.E.3d 873, ¶ 24 (6th Dist.), citing *Moore v. Moore*, 175 Ohio App.3d 1, 2008-Ohio-255, 884 N.E.2d 1113, ¶ 81 (6th Dist.). A trial court is authorized, but not required, to consider factors such as "the conduct of the parties, and any other relevant factors the court deems appropriate" when awarding attorney fees. R.C. 3105.73(A). This court has previously stated a trial court in a domestic relations action is not required to make any award for attorney fees. *Davis* at ¶ 31.

**{¶ 48}** The trial court's December 18, 2017 judgment entry stated with respect to attorney fees the following:

> In awarding attorney's fees, the Magistrate determined both Parties maintained a "* * * self-interested and unbending attitude * * *." The Magistrate further found "* * * neither [party] put forth a true effort to reach resolution or move towards resolution in any meaningful way." However, the Magistrate did find, "* * * the Plaintiff made it difficult to obtain information, or merely note the potential for resolution."
>
> It is difficult, if not impossible, for this Court to conduct a de novo review of the actions of the Parties as viewed by the trier of fact – which in this case was the Magistrate. The Court can find nothing in the record that does not support the Magistrate's evaluation of how this case developed, the conduct of the Parties or the other factors determined to be relevant to

22.

the Magistrate's determination of this issue. The Court therefore must rely on the Magistrate's observations and Findings in this regard. Therefore both Plaintiff's and Defendant's Objections as to the award of attorney's fees is overruled and DENIED. (Emphasis sic.)

**{¶ 49}** The trial court then ordered, "The Defendant should be awarded the sum of $5000 for attorney fees in this matter, to be adjusted by any set offs awarded to Plaintiff in this matter."

**{¶ 50}** The record shows Mrs. Buck submitted at the July 18, 2016 final hearing evidence of her attorney fees and expenses of $17,646.16 for the period from October 12, 2015, to July 15, 2016. Mr. Buck did not submit evidence of his attorney fees other than testifying he believed his "legal fees [are] roughly that or maybe even more." The parties then briefed the issue of attorney fees to the magistrate. The magistrate's March 20, 2017 decision states:

> There were few, if any, meaningful negotiations in this case. Not as a result of the Attorneys being unwilling to negotiate or resolve matters, but what appears to be more a self-interested and unbending attitude from the Parties. Neither put forth a true effort to reach resolution or move towards resolution in any meaningful way. However, [the magistrate] does find that Plaintiff in several instances made it difficult to obtain information, or merely ignored the potential for resolution. In light of these factors, and in consideration of R.C. 3105.73(A), it is the Decision of the [magistrate] that

23.

Defendant should be awarded the sum of $5000 for attorney fees in this matter, to be adjusted by any set offs awarded to Plaintiff in this matter.

{¶ 51} In this case the trial court considered the conduct of the parties as relayed by the magistrate's decision and further found nothing in the record to rebut the magistrate's evaluation of the parties' conduct. We find that although both parties rely on the issue of the designation of the "managed account" as either marital or separate property as a determinative factor in the attorney fee award, the trial court found the entire net settlement award, from which the "managed account" derived, was a marital asset. The trial court's December 18, 2017 judgment entry summarizes its view of the parties' marital property dispute:

> It has been the observation of this Court that when Parties are getting along, there is no discussion about whether monies (which are being utilized for ongoing expenses) are "gifts," the source of the funds or the appropriateness of the expenditures made. Those issues only become paramount when the Parties are not getting along and are considering divorce. Hindsight is 20/20. Both Parties appear to have recreated in their own mind a scenario which best benefitted them at the time of the divorce. This Court is not impressed with such a self-serving manipulation of history.

{¶ 52} We find the trial court did not abuse its discretion when it denied the objections and ordered the attorney fees award of $5,000 to Mrs. Buck.

24.

**{¶ 53}** Mrs. Buck's fourth assignment of error and Mr. Buck's third assignment of error are not well-taken.

**{¶ 54}** The judgment of the Fulton County Court of Common Pleas is affirmed. Appellant/cross-appellee and appellee/cross-appellant are ordered to equally pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE