DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Fulton County Court of Common Pleas, Domestic Relations Division, which granted the parties a divorce and determined child custody, the division of marital assets, imputation of income, and spousal support. Because we conclude that the trial court did not err in determining custody, but did err regarding the division of marital assets, imputation of income, and spousal support calculations, we affirm in part and reverse in part. *Page 2 
 {¶ 2} Appellant, Tracie L. Abbott, filed for divorce from appellee, Leland W. Abbott, Jr., in October 2005. The parties were married on February 2, 1993, and had three minor children, Austin, Aubrie, and Aaron.[1] A guardian ad litem ("GAL") was appointed to represent children, presumably because the divorce was highly acrimonious. Throughout the proceedings, the parties filed various motions regarding visitations and temporary support. At the trial court's instruction, both parties filed proposed findings of fact and conclusions of law along with some documentation.
 {¶ 3} On May 4, 2006, the trial court issued a judgment entry entitled "Findings of Fact and Conclusions of Law." Pursuant to appellant's oral motion to reconsider certain findings and conclusions, the court held a hearing on June 26, 2006.[2] After that hearing, the court filed a second "Findings of Fact and Conclusions of Law" on July 3, 2006. In that judgment entry, it adjusted some of its previous findings concerning custody, financial issues, the parties' incomes, and distribution of assets.
 {¶ 4} On July 25, 2006, appellant again filed a "Motion for Modification of Custody, Psychological Evaluations, and Other Relief," requesting changes to the child support and custody issues. On July 28, 2006, appellee also filed a motion for *Page 3 
"companionship" requesting that he be allowed to take the children to a family reunion which was scheduled for appellant's visitation weekend. The court granted appellee's motion and scheduled yet another hearing regarding certain issues.
 {¶ 5} On August 22, 2006, the court conducted a second hearing and the parties presented evidence regarding custody, child support, and visitation. At some point, the court also conducted in camera interviews of the children. On September 19, 2006, the court issued the final decree granting a divorce to the parties. In this judgment entry, the court first addressed pending motions of the parties, and then went on to make findings required for the final grant of divorce. The court awarded custody of the three minor children to appellee, assigned yearly incomes, calculated child support, valued and divided marital assets and debts, and awarded spousal support to appellant.
 {¶ 6} Appellant now appeals, arguing the following four assignments of error:
 {¶ 7} "I. The trial court erred to the prejudice of the appellant by awarding custody of the three minor children to the appellee as such award was an abuse of discretion.
 {¶ 8} "II. The trial court erred to the prejudice of appellant by imputing income to her for calculation of child support and spousal support which was not justified by the evidence presented to this court and was an abuse of discretion.
 {¶ 9} "III. The trial court erred in its property settlement award to the prejudice of appellant by ordering her to pay the appellee monies to equalize a distribution which was erroneous. *Page 4 
 {¶ 10} "IV. The trial court erred in its spousal support award considering the amount of child support and other payments required by the appellant to be made to the appellee and considering her true income rather than her imputed income and the requirements of [R.C.] 3105.18."
 I. {¶ 11} In her first assignment of error, appellant argues that the trial court abused its discretion by awarding custody of the three minor children to appellee.
 {¶ 12} Trial courts are granted broad discretion in matters concerning child custody and a trial court's decision will not be disturbed absent an abuse of discretion. Masters v. Masters (1994), 69 Ohio St.3d 83, 85. The term "abuse of discretion" implies that the trial court acted in a manner which was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 13} In allocating custody, the court must determine what is in the "best interest" of the child. R.C. 3109.04(B). To make this determination, the trial court must consider all relevant factors under R.C. 3109.04(F)(1), including but not limited to the following:
 {¶ 14} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 15} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; *Page 5 
 {¶ 16} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 17} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 18} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 19} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 20} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 21} "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;
 {¶ 22} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 23} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 24} In this case, the court determined that, although appellant had been granted temporary custody of the two younger children during the pendency of the divorce, it was in the children's best interest that appellee be given custody of all three children pursuant to the final decree. The court made its custody determination after reading the GAL's *Page 6 
report, listening to two days of testimony, viewing various documents presented in evidence, conducting in camera interviews of the children, and consulting with counselors from "Four County Family Center."[3]
 {¶ 25} One of the most significant factors relied upon by the court was that the children not be uprooted from the community, schools, and nearby relatives of both parties in the Delta area where they had been living. The children indicated to the GAL or by in court testimony that they were very involved with sports, liked their schools, and that they wished to live with their father in the Delta community. No transcript of the in camera interview by the court was included in the record, so we must presume that the children's disclosures supported the court's determination.
 {¶ 26} Even though not "outside the state," appellant's initial decision to move more than 40 miles away to a possibly temporary residence in an entirely different community and school district was certainly a negative factor when considering custody.[4] Although appellee's desire to move away from what had become a very stressful and contentious situation is understandable, that decision appeared to be more for her benefit *Page 7 
than the children's. The 45 to 60 minute drive from appellant's residence to take the children to school each day would have caused unnecessary upheaval and additional stress for them.
 {¶ 27} After interviews with the parties, the children, other family members, school principals, counselors, and the children's physician, the GAL recommended in his report that Austin remain in the custody of his father. Due to a variety of factors, the GAL did not make a recommendation as to custody for the two younger children, preferring to leave the decision to the trial court. Although the GAL report was not entered as an "exhibit," it was filed with the court and placed in the court's family file. Consequently, it was properly considered by the trial court and was included as part of the record on appeal.
 {¶ 28} Further, although evidence was presented that both parties engaged in immature, hostile behavior toward and derogatory comments about the other, testimony was presented that appellee was less flexible when the children's activities required cooperation between the parties or changes in the visitation schedule. Although the court did not specifically refer to R.C. 3109.04(F), the findings made indicate that it did consider those and all other relevant statutory factors in making the custody determination. Therefore, we cannot say that the trial court abused its discretion in determining that it was in the three children's best interest at this time for appellee to be the primary residential parent.
 {¶ 29} Accordingly, appellant's first assignment of error is not well-taken. *Page 8 
 II. {¶ 30} In her second assignment of error, appellant argues that the trial court erred in its calculation of the amount of yearly income imputed to her. We agree.
 {¶ 31} R.C. 3119.01(C)(5)(b) provides that "income," for purposes of determining child support for an unemployed or underemployed parent, includes the gross income and any potential income of the parent. Before income may be imputed to a parent, a court must find that the parent is voluntarily unemployed or underemployed. Keller v. Keller, 9th Dist. No. 04CA0084, 2005-Ohio-3302, ¶ 13. Whether a parent is voluntarily unemployed or underemployed is a factual determination within the trial court's discretion. Rock v. Cabral (1993), 67 Ohio St.3d 108, syllabus. The determination will be reversed on appeal only upon the finding that the court abused its discretion. Id.
 {¶ 32} Upon a finding of either voluntary unemployment or underemployment, the trial court then must consider the factors set forth in R.C. 3119.01(C)(11)(a):
 {¶ 33} "(i) The parent's prior employment experience;
 {¶ 34} "(ii) The parent's education;
 {¶ 35} "iii) The parent's physical and mental disabilities, if any;
 {¶ 36} "(iv) The availability of employment in the geographic area in which the parent resides;
 {¶ 37} "(v) The prevailing wage and salary levels in the geographic area in which the parent resides;
 {¶ 38} "(vi) The parent's special skills and training; *Page 9 
 {¶ 39} "(vii) Whether there is evidence that the parent has the ability to earn the imputed income;
 {¶ 40} "(viii) The age and special needs of the child for whom child support is being calculated under this section;
 {¶ 41} "(ix) The parent's increased earning capacity because of experience;
 {¶ 42} "(x) Any other relevant factor."
 {¶ 43} R.C. 3105.18(C) permits inquiry into a party's earning potential so that income may be imputed to parties who are voluntarily underemployed or otherwise not working up to their full earning potential. Rothman v. Burns, 8th Dist. No. 88756, 2007-Ohio-3914, ¶ 31, citing to Frost v. Frost (1992), 84 Ohio App.3d 699. Nevertheless, a court's factual determination of the imputed amount must be supported by competent, credible evidence of the party's past or potential ability to earn that amount. See Williams v. Williams, 12th Dist. No. CA2006-09-103, 2007-Ohio-2996.
 {¶ 44} In this case, in its May 4, 2006 judgment entry, the court found that appellant was then earning $8,060 per year as a part-time retail store clerk. This figure corresponds to information appellant provided stating that she earns $7.75 per hour at 20 hours per week. The court then determined, however, that appellant "has the capacity to earn $20,000.00 per year."
 {¶ 45} Our review of the record indicates, however, that there is insufficient evidence to support the amount of income imputed to appellant. Appellant had been a stay-at-home mother who engaged in dog breeding which provided some income. *Page 10 
Although appellee alleged that appellant made a substantial amount of income from this business, no evidence was presented to support such a finding. According to her proposed findings of fact, appellant admitted that she had earned at one time as much as $10,000 in yearly income in the dog-breeding business. Again, although appellee contended that the income was higher, we can find nothing in the record to support that contention, and, in fact, the trial court never made such a finding. The court specifically noted that appellant was no longer involved in that business and now works part-time in a store instead. Furthermore, the court did not assign any income value to the business, which was located on her former in-laws' farm. Rather, the court designated it as a marital asset.
 {¶ 46} Appellant also acknowledged earning $10,280 in 1998, while employed in a factory. No evidence was presented that such a position was then currently available. Although the court noted that appellant "is in a relationship whereby many of her living expenses have been absorbed," this is not a factor which would indicate appellant's ability to earn income and, thus, is not properly considered to determine the amount imputed. Nothing in the record indicates that appellant has prior work experience, education, or special skills or training which would allow her to seek and obtain a higher paying job. In addition, no evidence was offered to show that she was offered a full-time clerk position by her current employer, but had refused such employment. Further, there was no evidence presented at trial as to the availability of other full-time employment and the prevailing wage and salary levels in the geographic area where appellant resides. *Page 11 
 {¶ 47} Based upon the record presented, we conclude that, for the purposes of child support calculation, the highest yearly income which may be imputed to appellant at the time of the hearings was $10,280. Therefore, the trial court abused its discretion in imputing appellant's income at $20,000.
 {¶ 48} We also note that, in the court's initial "finding of facts" judgment entry, the court found appellee's income to be $40,000. In the second, the court then changed this amount, noting that additional evidence presented established that appellee's current income was actually $44,668. In the final judgment entry, however, without explanation, appellee's income is again listed as $40,000. On remand, the court must also determine the correct amount to be used for appellee's income in order to properly calculate child support.
 {¶ 49} Accordingly, appellant's second assignment of error is well-taken.
 III. {¶ 50} In her third assignment of error, appellant argues that the trial court erred in its division of marital assets by ordering her to pay a sum of money to equalize the distribution. Appellant specifically challenges the inclusion of a value for the dog-breeding business, the value of appellee's 401(K) pension account, and exclusion of alleged loans to appellant from her mother and sister during the pendency of the divorce proceedings.
 {¶ 51} In a divorce case, the trial court exercises broad, though not unlimited, discretion in dividing marital assets. Neville v.Neville, 99 Ohio St.3d 275, 2003-Ohio-3624, ¶ 5; *Page 12 Moore v. Moore, 166 Ohio App.3d 429, 2006-Ohio-1431, ¶ 7. Nevertheless, when making an equitable division of marital property, the trial court must rely on competent, credible evidence in ascertaining the value of marital assets. Hightower v. Hightower, 10th Dist. No. 02AP-37, 2002-Ohio-5488, ¶ 22; Moro v. Moro (1990), 68 Ohio App.3d 630,637. A trial court must have a rational, evidentiary basis for assigning value to marital property. McCoy v. McCoy (1993), 91 Ohio App.3d 570,576-578.
 {¶ 52} In this case, regarding the value of the dog business, the court specifically found that appellant was no longer engaged in that business, but then assigned it a value of $2,000 which was then credited to appellant. As we previously noted, the business was located on appellee's parents' farm. Either by choice or as payment of a debt to appellee's mother, appellant left this business and whatever assets it contained, including any puppies which were allegedly sold by appellee. Therefore, since appellant no longer conducted or possessed the assets of this business, it had no value for the purposes of distribution of marital assets. Therefore, the trial court improperly credited the $2,000 value to appellant.
 {¶ 53} Next, appellant argues that the trial court improperly valued the amount in appellee's 401(K) account. The court ultimately valued the pension account at $4,886.41, apparently arriving at this total by subtracting a loan and "taxes." Appellant argues that the trial court, in essence, subtracted a loan after the loan had, in fact, already been subtracted. *Page 13 
 {¶ 54} The record contains two exhibits related to the Vanguard 401(K) pension plan for appellee. During the August 21, 2006 hearing, appellant introduced an exhibit showing that on March 31, 2005, the pension account had a balance of $11,601.50 with an outstanding loan of $4,213.10, leaving a balance of $7,388.40. In his proposed findings of fact, appellee attached another document from "Vanguard Trust Company" showing that on September 20, 2005, appellee had cashed out his 401(K) plan, which had contained $13,030.63. The print-out showed deductions of $2,606.13 withheld for federal taxes and an increase in the loan amount to $5,538.09. The net distribution was $4,886.41. In other words, the evidence of the net amount from the 401(K) account differed from appellant's figure by about $3,175.
 {¶ 55} We can find nothing in the record to show how appellant spent these marital funds, other than a statement by counsel in appellee's proposed findings of fact that he was "forced to cash out that plan during the pendency of this action." The court's use of proposed findings of fact without first having evidence and testimony put on the record makes it difficult, if not impossible, for us to review this issue. Since no actual testimony was presented regarding appellee's use of this money or the reason for his being "forced" to cash the account out, we conclude that the trial court's finding that only $4,886.41 remained in this account was simply not supported by the record. Therefore, we conclude that the trial court erred in its valuation of appellee's 401(K) account, based upon only attorney arguments, presented in a pleading. On remand, however, the court *Page 14 
must inquire further, utilizing admissible evidence or sworn testimony from the parties, to determine which figure should be credited to appellee for the 401(K) account.
 {¶ 56} Finally, appellant claims that the court ignored the evidence that she owed money to her mother and sister for expenses during the pendency of the proceedings. This matter was primarily an issue of credibility. Consequently, we decline to disturb the trial court's omission of this debt. Again, on remand, the court may, however, choose to reconsider evidence presented regarding these alleged loans when re-calculating marital debts.
 {¶ 57} Accordingly, appellant's third assignment of error is well-taken.
 IV. {¶ 58} In her fourth assignment of error, appellant asserts that the trial court erred in its award of spousal support. Appellant argues that the trial court's imputation of income and other considerations were improper.
 {¶ 59} R.C. 3105.18 provides:
 {¶ 60} "(A) As used in this section, "spousal support" means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and for support of the spouse or former spouse. "Spousal support" does not include any payment made to a spouse or former spouse, or to a third party for the benefit of a spouse or former spouse, that is made as part of a division or distribution of property or a distributive award under section 3105.171 of the Revised Code. *Page 15 
 {¶ 61} "* * *
 {¶ 62} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 63} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 64} "(b) The relative earning abilities of the parties;
 {¶ 65} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 66} "(d) The retirement benefits of the parties;
 {¶ 67} "(e) The duration of the marriage;
 {¶ 68} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 69} "(g) The standard of living of the parties established during the marriage;
 {¶ 70} "(h) The relative extent of education of the parties;
 {¶ 71} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; *Page 16 
 {¶ 72} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 73} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 74} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 75} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 76} "(n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 77} "(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income."
 {¶ 78} Each of the factors under R.C. 3105.18(C)(1) relates, either directly or indirectly, to the obligee spouse's need or the obligor spouse's ability to pay support. Billingham v. Billingham (Feb. 16, 2001), 2d Dist. No. 18403. See, also, Ladman v. Ladman, 6th Dist. No. L-04-1355, 2005-Ohio-6851, ¶ 42. Although the focus of the statute is now on whether spousal support is "appropriate and reasonable," the obligee spouse must still prove a need for support in most cases.Billingham, supra. "The term *Page 17 
`need' is an elastic concept that differs from case to case, and that encompasses more than just ensuring that the obligee spouse has the basic necessities of food, clothing, and shelter." Id. The proper inquiry is whether the obligee spouse requires continued spousal support to sustain the standard of living that existed during the marriage and the obligor spouse's ability to pay such commensurate support. Id. If the answer to both inquiries is "yes," then some amount of spousal support would be appropriate and reasonable under the statute. Id.
 {¶ 79} In this case, in its final judgment entry, the trial court stated: "Due to the disparity of incomes and the length of the marriage it appears Plaintiff will need some assistance to help her pay her child-support obligations, her debt obligations, the payments on the equity note, and her own maintenance. Accordingly Defendant shall pay Plaintiff $200 per month, for a total of four years * * * but terminable upon death of either party, or remarriage, or cohabitation by Plaintiff."
 {¶ 80} We are puzzled that the trial court determined that appellant is capable of earning more income, awarding to appellee corresponding child support and a note in the amount of $2,647.10 to equalize assets, but then granted spousal support to assist her in making these payments. Moreover, we note that, although contributions from other sources to cover appellant's living expenses was not a proper consideration for the purposes of imputing income to determine child support, such financial assistance may be properly considered when determining an amount of spousal support which is "appropriate and reasonable." We conclude that the trial court, after re-calculating child *Page 18 
support and marital assets in conformity with this decision, must re-evaluate its award of spousal support.
 {¶ 81} Accordingly, appellant's fourth assignment of error is well-taken.
 {¶ 82} In addition to the issues which were found to be error, we are compelled to point out that the final decree is deficient and confusing and must be corrected on remand. The trial court's two interlocutory rulings designated as "findings of fact and conclusions of law," created confusion not only in the record, but in the final judgment entry. Consequently, to clarify and clearly designate the rights and responsibilities of the parties, on remand, the trial court must add the following necessary factual findings which were overlooked in the final judgment.
 {¶ 83} Although the court references "the parties' three children Austin, Aubrie, and Aaron" when designating appellee as the primary residential parent, no other findings were made regarding the existence of the children. Upon remand, the court must include in the final decree specific factual findings regarding the birth of the three children as issue of the marriage. In addition, the court also referenced the "long duration of the marriage" when awarding spousal support, but failed to make a finding as to when the parties were married or when the marriage terminated, for purposes of dividing assets. Finally, wherever statutory law requires certain findings, i.e., spousal support or child custody, it is appropriate and highly recommended that the court reference these sections or factors, so as to clearly establish support for its findings of fact and conclusions of law. The trial court must re-examine its final judgment entry and make the noted corrections *Page 19 
and any other clarifications which will assist the parties to understand and carry out its orders.
 {¶ 84} The judgment of the Fulton County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. This case is remanded to the trial court for proceedings consistent with this decision. Appellant and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J. Arlene Singer, J., William J. Skow, J., CONCUR.
[1] Although the final divorce decree does not include these findings, the record indicates the marriage date and the three children are referenced in the judgment entry regarding child support and custody.
[2] We note that in its July 3, 2006 judgment entry, it refers to having held an evidentiary hearing on June 1, 2006. Since the docket sheet and the transcript both refer to June 26, 2006, we presume that the reference in the court's judgment entry is simply a typographical error.
[3] We note that Austin mentioned in his testimony that he had seen two different women counselors at the Four County Family Center, which seems to correlate with the two persons contacted by the court. Although we agree that the court's ex parte activity regarding information from these counselors was improper, we cannot say that this action caused prejudicial error since the remaining testimony and evidence still supports the trial court's decision.
[4] At the second hearing, appellant indicated that she was intending to move back to the Delta area, but had not yet found a residence there and was planning to drive the children 44 miles one way to and from school. Therefore, her actual residence was still unsettled at the time that the court was making its custody determination. *Page 1