[Cite as *FitzGerald v. FitzGerald*, 2021-Ohio-751.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Margaret A. FitzGerald n/k/a Korfhage

Appellee

v.

Sean P. FitzGerald

Appellant

Court of Appeals Nos. WD-20-026
WD-20-048

Trial Court No. 2017DR0012

**DECISION AND JUDGMENT**

Decided: March 12, 2021

* * * * *

Donna Engwert-Loyd and Adam M. Borgman, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This consolidated appeal is before the court following the November 14, 2019, and March 2 and April 24, 2020 judgments of the Wood County Court of Common Pleas, Domestic Relations Division, which, respectively, granted the parties a divorce, made custody and child support determinations, divided marital and separate property,

awarded appellee attorney fees and ordered that a bond be posted during the pendency of the appeal on the final divorce decree. Because we ultimately conclude that the trial court did not abuse its discretion, we affirm.

{¶ 2} The parties were married in 1987, and had two minor children born in 2002 and 2006. Appellee, Margaret FitzGerald, filed for divorce on January18, 2017; an amended complaint was filed on April 16, 2018. The parties agreed that appellee be designated the temporary residential parent and appellant was awarded parenting time. Soon thereafter, the proceedings became increasingly contentious.

{¶ 3} Relevant to this appeal, at a hearing on April 4, 2019, appellant was informed that he was being held in contempt for "lying" to the court about the filing of a grievance against the attorney for minor child, I.F. Appellant informed the court that the contempt finding would result in his termination from his employment. The judgment entry finding appellant in contempt was filed the same day.

{¶ 4} On April 16, 2019, the matter was set for a trial commencing July 10, 2019. The court ordered that the parties "exchange exhibits, witness lists, stipulations and a list of contested issues no later than two weeks prior to trial." At a pretrial held on July 3, 2019, it was brought to the court's attention that appellant had not complied with the order to provide the exhibits and witness lists. Appellant stated his belief that the materials were due that day, or one week prior to trial. Appellee's counsel then moved to prevent appellant from presenting any witnesses or exhibits as trial. The court granted the motion; a journalized order was filed on July 8, 2019.

2.

{¶ 5} On July 5, 2019, appellant filed a motion to strike appellee's witness and exhibits lists and list of contested issues claiming that they too were untimely filed; that they were filed 13 days prior to trial. Appellant further argued that because appellee failed to "exchange exhibits," she should be barred from introducing any exhibits at trial. Appellant also filed his trial brief and witness and exhibits lists. The court denied appellant's motion.

{¶ 6} The matter proceeded to trial on July 10, 2019. Testimony was first presented as to the grounds for divorce: extreme cruelty and living separate and apart for one year. Appellee testified that the parties' relationship had been deteriorating over time and especially in the year leading to the divorce filing. Appellee described that appellant had been resurrecting incidents from 20-30 years prior, many of which were prior to the parties' marriage, where he perceived he had been wronged. Appellee further stated that appellant had become increasingly controlling including monitoring her cell phone calls and usage. Copies of various communications between the parties were admitted into evidence. Appellee testified that the parties had been living separate and apart one full year prior to April 16, 2018, the date the amended divorce complaint was filed. A family friend and appellee's sister also testified regarding their observations.

{¶ 7} As to the custody issue, the children's guardian ad litem (GAL) filed her initial report with the court on November 7, 2017; on May 30, 2019, a supplemental report was filed with the court. Both were admitted into evidence and reflected the GAL's testimony. The GAL testified regarding the escalating conflicts between I.F. and

3.

appellee surrounding her discipline of him and his growing "solidarity" with appellant. The GAL further indicated her disagreement with appellant talking about the divorce with I.F. and leaving legal documents within his view, and allowing him to read Our Family Wizard messages between the parties. The GAL believed that appellant, by discussing divorce issues with I.F., had worked to alienate him from his mother.

{¶ 8} The GAL agreed that I.F.'s violent outbursts generally followed an "adverse interaction" with appellee. The GAL clarified that it was in response to appellee disciplining I.F. The GAL stated that appellant's characterization of appellee's attempts to discipline I.F. as "harassment" underscored the fact that he did not support her and "emboldened" I.F. to continue to act out. The GAL testified that as of April 2019, I.F. had been living exclusively with appellant and though she had not spoken directly with him, by all accounts he was doing well.

{¶ 9} D.F. indicated to the GAL that he wants to spend equal time with each parent. The GAL stated that as the children have matured; D.F.'s relationship with I.F. has begun to improve. As to D.F., the GAL recommended that appellee be named the residential parent and guardian but that the parties equally share parenting time. As to I.F., the GAL recommended shared parenting

{¶ 10} Appellee testified that as to I.F., she did not believe that they could have visitation together until some counseling had taken place. Appellee stated that she and I.F. had not been communicating. Appellee wished to have control of I.F.'s educational decisions and appellant have control of medical decisions. Contrary to the GAL's

4.

recommendation, appellee stated that she desired that I.F. reside with appellant. As to D.F., appellee stated that the shared parenting could continue.

{¶ 11} Psychologist Mark Babula conducted an evaluation of the family members and authored his report on October 22, 2018, with an addendum on March 24, 2019. Babula recommended that the parties have shared parenting.

{¶ 12} The court then determined that appellee had proven the grounds of extreme cruelty and that appellant alienated the children from their mother and that he "would not and should not be a residential parent, a legal custodian of either of the children." The matter proceeded to the financial issues.

{¶ 13} Appellee testified of her desire to receive child support based upon the statutory guidelines and that appellant's income should be imputed to him due to the manner in which he lost his job. Appellee was also questioned about health insurance and other expenses of the children including school tuition and extracurricular activities.

{¶ 14} As to spousal support, during the course of the nearly 30-year marriage, there was a disparity in income with appellant making more money. Appellee indicated that she did not initially request spousal support but due to concerns about appellant prolonging the proceedings and the fact that she had already incurred a large sum of legal expenses, she wanted to keep the option available.

{¶ 15} Appellee testified regarding her income and expenses. Appellee acknowledged that the marital home would be sold in order to reduce monthly expenses. Appellee testified that she was requesting that appellant pay 70 percent of her attorney

5.

fees. Appellee stated that appellant had prolonged the proceedings which caused her to incur excessive fees.

{¶ 16} Appellee also testified as to the division of marital property and various assets. Appellee requested that she be awarded 70 percent of the HSA bank accounts, marital retirement accounts, and other financial assets valued on the first day of trial. Appellee further requested 100 percent of the value of her Roth IRA. Appellee also requested her marital share of the equity in a vehicle traded in by appellant. Exhibits supporting the testimony were admitted into evidence.

{¶ 17} As to marital debts and expenses, appellee testified as to approximately $5,000 in credit card debt. Appellee stated her request that the parties pay their own credit card debts and life, auto, and health insurance premiums. Appellee stated that appellant received the 2017 and 2018 tax refunds and that she would like the proceeds equally divided. Regarding taxes, appellee indicated that she would like the mortgage deduction for 2017 and 2018 when she solely paid the mortgage on the marital home, and tax exemptions for the children. Appellee also requested reimbursement for accounts withdrawn on by appellant during the proceedings.

{¶ 18} Also discussed was the $25,000 in attorney fees appellee claimed was owed to her pursuant to a court order. Appellant claimed that he had not received a copy of the bills until the start of the trial. Appellee was questioned and cross-examined about the attorney fees. The court continued the hearing on the issue to allow appellant time to review the billing statements and question a witness.

6.

{¶ 19} Upon reconvening, financial expert and CPA, Gary Pfundt, Jr., testified that he was employed to determine whether the parties should file a joint or separate tax return for 2017, and to compile a list of assets and monthly expenses for each party. Prior to Pfundt making his determination, appellant had already filed his tax return.

{¶ 20} Pfundt stated that he created a spreadsheet with the information as of September 2018, but that he was unable to update the information because appellant had not provided the requested documents. Pfundt admitted that he conducted no analysis of the data placed on the spreadsheet. Extensive questioning was conducted and objections raised regarding the fact that Pfundt ultimately prepared and filed appellee's 2017 income tax return with permission of the court.

{¶ 21} Appellee was then cross-examined about her employment, purchases, and expenses and use of marital assets. Appellee was questioned about an investment account she opened in 2012, in her own name and funded without informing appellant. Appellee admitted that she took that action due to appellant's increasingly controlling behavior. Eventually the monies were transferred to an account of appellant's.

{¶ 22} Appellee testified that she believed that she should receive spousal support based on appellant's prior salary, despite his resignation, since appellant was to receive an approximate nine-week payout and had time find other employment. Appellee was questioned about her salary and mandatory distribution from the Roth IRA.

{¶ 23} Appellee testified that as of June 20, 2019, when she filed a motion for attorney fees, she had accrued approximately $83,000 in attorney fees. Appellee stated

7.

that she paid the bills through her income, temporary spousal support, and family loans. Appellee stated that the large sum was due to appellant's act of prolonging the proceedings by filing endless motions and continuing the trial date on multiple occasions.

{¶ 24} Appellant was questioned about his various savings, checking, investment, and retirement accounts. He also testified regarding the relevant income tax returns and refunds. Exhibits depicting the balances of the various accounts and relevant tax forms were admitted into evidence.

{¶ 25} Appellant was further questioned about his attempts to obtain employment following his agreed-upon resignation from Bowling Green State University. Appellant indicated that he had looked at some jobs but not applied to any due to the time constraints of trial preparation. Further, appellant disputed the appropriateness of any of the legal job listings he has reviewed.

{¶ 26} Appellant provided narrative testimony on direct examination. Appellant denied extreme cruelty on his part to support the divorce; he attempted to rebut the specific allegations. Appellant denied neglect of his marital duties and the parental alienation claims. Appellant testified at length about his belief that appellee was responsible for the deterioration of her relationship with the children, especially I.F.

{¶ 27} As to property division, appellant asserted that the Roth IRA was not inherited, separate property but that appellee was a designated beneficiary and, thus, it was marital property. Appellant further claimed that because he purchased appellee's wedding bands prior to the marriage they were his separate property.

8.

{¶ 28} As to spousal support, appellant claimed "involuntary" unemployment and limited re-employability due to the court's April 4, 2019 contempt finding. Appellant claimed that appellee was, in fact, voluntarily underemployed based upon her education and experience and should be imputed a salary of at least $100,000. Appellant then requested that he be awarded spousal and child support and be awarded $65,667 in overpayment of spousal and child support. He requested that the parties be designated shared "equal residential" parents with parallel parenting. Appellant further requested that because appellee instituted the proceedings and he had done "nothing to extend, delay, or to add costs" to the case, he not be required to pay any of appellee's attorney fees.

{¶ 29} On November 14, 2019, the trial court issued its decision and judgment on the divorce. The court concluded that appellee was entitled to a divorce on the grounds of extreme cruelty and living separate and apart for one year. As to custody of the children, the court found that appellant alienated the children against appellee and failed to follow court orders regarding them. The court designated appellee legal custodian and residential parent of both children. As to I.F., appellee was to be responsible for education decisions and appellant for medical decisions. Appellee's parenting time with I.F. would be agreed-upon between appellee and I.F. As to D.F., the parties were to have equal parenting time.

{¶ 30} As to child support, the court ordered that, based on the parties' potential 2019 gross incomes, appellant pay child support to appellee. The court further found

9.

appellant to be voluntarily underemployed.  The court then divided the parties' physical and monetary assets.  Notably, the court first found that the Roth IRA was appellee's separate property.  The court concluded that the wedding ring was a completed gift and appellee's property.  Appellee was awarded 70 percent of the proceeds of the sale of the marital residence.  From the 30 percent awarded to appellant, the court granted appellee's request that any attorney fees awarded be deducted from that amount.  Appellee was also awarded 70 percent of the parties' combined retirement accounts.

{¶ 31} The temporary spousal support order was terminated.  The court granted appellee's request that appellant pay her and the children's attorney fees citing appellant's repeated acts of violating orders of the court, engaging in numerous discovery disputes, and abusing the legal process.  The court gave the parties 15 days to submit proposed findings of fact and conclusion of law; the date was extended.

{¶ 32} On December 9, 2019, the parties filed their respective proposed findings of fact and conclusions of law.  On March 2, 2020, the trial court adopted, in toto, appellee's findings of fact and conclusions of law.

{¶ 33} Thereafter, on April 6, 2020, appellant filed a motion to stay the order pending direct appeal in case No. WD-20-026, and requested modification of the custody, child support, and attorney fees orders.  Appellant also requested a waiver of the posting of a supersedeas bond.  Appellee, conversely, requested that an appeal bond be posted.

10.

**{¶ 34}** On April 24, 2020, the trial court denied the motion. The court further found that appellee's motion for appeal bond in the amount of $731,308 was well-taken. Appellant commenced an appeal from this order, case No. WD-20-048.

**{¶ 35}** During the course of the trial proceedings, and prior to the appeals herein, appellant was found in contempt of court on three occasions: April 4, 2019, as set forth above, and September 11 and 23, 2019. Appellant appealed these findings and on November 25, 2020, this court reversed and vacated the contempt findings. *See FitzGerald v. FitzGerald*, 6th Dist. Wood Nos. WD-19-027, WD-19-074, 2020-Ohio-5442. Specifically, we found that as to the April 4, 2019 contempt findings, the trial court abused its discretion in finding appellant in direct, criminal contempt of court. *Id.* at ¶ 21. As to the September contempt findings, both relating to the sale of the marital home, we concluded that because appellant was not ordered to attend the September 9, 2019 closing, he could not be found in contempt for his failure to attend. *Id*. at ¶ 41-42.

**{¶ 36}** In the present appeals, in case No. WD-20-026, appellant raises six assignments of error for our review:

> Assignment of Error I: The trial court erred to the prejudice of husband by precluding him from filing his witness list and exhibits out of rule and from calling witnesses or presenting exhibits at trial.

> Assignment of Error II: Husband was denied a fair trial by a biased and partial judge.

11.

Assignment of Error III:  The trial court's findings and order regarding the allocation of parental rights and responsibilities are not supported by the evidence and are in fact contrary to the evidence, rendering its orders pertaining thereto unreasonable, arbitrary, and capricious, and not in the children's best interests.

Assignment of Error No. IV:  The trial court's orders regarding child support are an abuse of discretion and contrary to law.

Assignment of Error No. V:  The trial court's award of marital assets is contrary to law, against the weight of the evidence and an abuse of discretion.

Assignment of Error No. VI:  The trial court erred to the prejudice of husband and abused its discretion in its award of attorney fees to wife.

In case No. WD-20-048, appellant raises the following assignment of error:

The trial court erred to the prejudice of husband by ordering him to post a bond upon its denial of his motion to stay the judgment below.

**Discovery**

{¶ 37} Appellant's first assignment of error in WD-20-026 is that the trial court erroneously precluded him from filing witness and exhibit lists and from presenting witnesses and exhibits during trial.  Appellant further argues that the court demonstrated bias and unequal treatment towards him by denying appellant's motion to strike appellee's witness and exhibits lists as they were filed one day late, or 13 days before

12.

trial. Appellant argues that the court further demonstrated bias by subpoenaing the Wood County Clerk of Courts as a witness to confirm appellee's explanation. When this did not bear out, the court still denied the motion. Finally, appellant contends that appellee was given preferential treatment in that the court allowed her to amend her witness list and exhibits throughout the trial. Appellee asserts that the attempted late filing was indicative of appellant's failure throughout the course of the proceedings to cooperate in the discovery process.

{¶ 38} "A trial court has broad discretion when imposing discovery sanctions. A reviewing court shall review these rulings only for an abuse of discretion." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996), syllabus. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 39} Reviewing the proceedings below, we cannot find that the court abused its discretion when it prevented appellant from presenting witnesses and exhibits at trial as a discovery sanction. The record clearly established the date the items were due. Further, at the July 3, 2019 hearing, appellee asserted prejudice in her inability to prepare for trial.

{¶ 40} As to appellee's filing of her witness list and list of initial trial exhibits which were recorded one day late, on July 15, 2019, pursuant to a subpoena served by appellee's counsel, the Wood County Clerk of Courts, Cindy Hofner, testified that on June 26, 2019, between 2:30-5:30 p.m., the communication between the electronic filing

13.

and case management systems went down and items received were not recorded until the following day. During cross-examination, Hofner admitted that a document is not deemed filed until it is approved by the clerk's office.

{¶ 41} Denying appellant's motion to strike appellee's filing the court noted that unlike appellant, appellee tendered her trial witness and exhibits lists to the court the day they were due. Even if appellee's filings were properly considered one day late, the court still had discretion to accept them and to deny appellant's motion to strike. The court noted the key distinction between appellant's and appellee's filings was that appellee, in good faith, attempted to comply with the order.

{¶ 42} Finally, even if we were to assume the court erred, appellant has not indicated what specific evidence he would have presented. During trial, the court gave appellant significant leeway during his cross-examinations and allowed him to present an extensive narrative during his direct testimony

{¶ 43} Appellant further challenges the court's denial of his request to strike appellee's filing of multiple amended exhibits lists. This too was within the court's discretion and we find no error. Further, appellee reserved the right to amend the lists in her initial filing. Appellant's first assignment of error is not well-taken

**Bias and Discretion at Trial**

{¶ 44} In appellant's second through fifth assignments of error he contends that the trial court evidenced bias and abused its discretion in making certain rulings during

14.

and after trial.  Appellant first argues, generally, that the court's obvious bias against him denied him a fair trial.

{¶ 45} "An appellate court lacks jurisdiction to disqualify a common pleas judge or to vacate a common pleas court judgment on the basis of judicial bias."  *Branum v. Branum*, 6th Dist. Ottawa No. OT-10-019, 2011-Ohio-361, ¶ 56, citing *Beer v. Griffith*, 54 Ohio St.2d 440, 441-442, 377 N.E.2d 775 (1978); *State v. Valenti*, 6th Dist. No. WD-05-046, 2006-Ohio-3380, ¶ 25.  The proper procedure is the filing of an affidavit under R.C. 2701.03.  *Id.*, citing *Beer* at 441-442.

{¶ 46} Challenging the legal proposition above, appellant relies on *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, which vacated the defendant's convictions where the court's bias was "inextricably entwined" with the denial of a criminal defendant's Sixth Amendment right to self-representation.  We do not dispute the general proposition "'that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law.'"  *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 78, quoting *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34.  However, the present matter is distinguishable as it does not involve a criminal defendant's due process rights.

{¶ 47} Further, appellant has, in fact, raised the issue of bias in the Supreme Court of Ohio by filing two affidavits of disqualification.  The first affidavit was denied on February 21, 2019, in *In re Yarbrough*, 156 Ohio St.3d 1239, 2019-Ohio-1625, 125 N.E.3d 965, the second affidavit was denied on July 8, 2019, in *In re Yarbrough*,

15.

157 Ohio St.3d 1228, 2019-Ohio-4450, 134 N.E.3d 1233. As to the first affidavit, the Supreme Court found no confirmed instances of bias or hostility as to the court's remarks and that appellant's disagreement with the court's adverse rulings failed to establish bias or prejudice. *Yarbrough I* at ¶ 5-6. In *Yarbrough II*, the court acknowledged that even if the judge "made a few isolated and unnecessary comments in moments of frustration" the record "does not establish that he should be removed for bias * * *." *Id.* at ¶ 6.

{¶ 48} Certainly we can consider the court's alleged bias in determining whether the court abused its discretion in making various rulings. It is presumed that a judge is not biased or prejudiced, and a party alleging bias or prejudice must present evidence overcoming the presumption. *Cline v. Mortg. Elec. Registration Sys., Inc.*, 10th Dist. Franklin No. 13AP-240, 2013-Ohio-5706, ¶ 33, quoting *Wardeh v. Altabchi*, 158 Ohio App.3d 325, 2004-Ohio-4423, 815 N.E.2d 712, ¶ 20 (10th Dist.). Because appellant has failed to demonstrate bias or prejudice so pervasive as to deny him a fair trial, we deny appellant's second assignment of error. However, with the above principles in mind, we turn to appellant's next three assignments of error.

{¶ 49} Appellant's third assignment of error asserts that the court erred in its decision regarding the allocation of parental rights and responsibilities. Specifically, appellant argues that in making its decision, the trial court erroneously relied on its belief that appellant alienated his children from their mother; appellant asserts that the record does not support this claim.

16.

{¶ 50} R.C. 3109.04(A) provides that in any divorce proceeding, the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage.  R.C. 3109.04(B)(1) then requires that in making that allocation, the court shall consider the best interest of the children.  In considering the best interest of the children, R.C. 3109.04(F) requires a court to consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that

either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's rights to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 51} A trial court has broad discretion in custody determination matters. *Jones v. Jones*, 6th Dist. Lucas No. L-10-1044, 2012-Ohio-2225, ¶ 13, citing *Trickey v. Trickey*, 158 Ohio St. 9, 14, 106 N.E.2d 772 (1952). On review, an appellate court must uphold a trial court's custody determination absent an abuse of discretion. *Sayre v. Hoelzle-Sayre*, 100 Ohio App.3d 203, 210, 653 N.E.2d 712 (3d Dist.1994). Accordingly, absent a showing that the trial court's attitude in reaching its decision was unreasonable, arbitrary or unconscionable, the court must affirm the trial court's custody determination. *Id.* Further, it is the trial court's role to determine factual disputes and "weigh the testimony and credibility of the witnesses" *Gardini v. Moyer*, 61 Ohio St.3d 479, 484, 575 N.E.2d 423 (1991), and the court will not entertain those tasks on appeal.

{¶ 52} Appellant's claim that there is no support for the court's finding that appellant alienated the children from their mother it not borne out by the record. In addition to the testimony presented at trial, the court relied upon the GAL's report, its interviews with the children, comments made on the Our Family Wizard message system,

and appellant's failure to follow court orders regarding the children. We cannot say that the court abused its discretion. Appellant's third assignment of error is not well-taken.

{¶ 53} In his fourth assignment of error, appellant challenges the trial court's child support order and bases his argument upon the fact that his unemployment was not "voluntary" but was the direct result of the court's April 4, 2019 contempt finding. Appellee counters that appellant's separation from his university general counsel position had multiple causes and that the court, looking at his education and employment history, did not err in determining that he was capable of employment as an attorney and that he was voluntarily underemployed.

{¶ 54} When computing child support, the trial court evaluates the income of each of the parents. *Drummer v. Drummer*, 3d Dist. Putnam No. 12-11-10, 2012-Ohio-3064, ¶ 24. While reviewing the parties' income, the trial court may determine that a party is voluntarily underemployed or unemployed. *Id.* If the trial court makes such a finding, the trial court must consider the party's potential income, "which is income the parent would have earned if he or she had been fully employed." *Id.*, citing R.C. 3119.01(C)(5)(b), and (11)(a). The factual determination of whether a parent is voluntarily underemployed or unemployed is within the trial court's discretion. *Abbott v. Abbott*, 6th Dist. Fulton No. F-06-020, 2007-Ohio-5308, ¶ 31, citing *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993), syllabus. The determination will be reversed on appeal only upon the finding that the court abused its discretion. *Id.*, citing *Rock* at syllabus.

20.

{¶ 55} In imputing the potential income of a party the trial court must review multiple factors as set forth in R.C. 3119.01(C)(11)(a):

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

{¶ 56} In its November 14, 2019 decision, the court stated that the child support amount would be based on the parties' 2019 potential incomes. The court concluded that appellant was voluntarily underemployed and that his "loss of employment is a direct

result of his own unprofessional and mendacious conduct." The court further found that appellant is "capable of being employed as a lawyer." Appellant was ultimately ordered to pay child support. Appellant's request for child and spousal support were denied.

{¶ 57} Appellant now argues the trial court's wrongful finding of contempt on April 4, 2019, directly resulted in the loss of his job which, thus, rendered his unemployment involuntary and the court erred in imputing income to him on this basis. Appellant additionally argues that the court's granting of his motion to modify temporary support orders, to reduce the amounts due to the loss of his job, provides further support that the final child support order was erroneous.

{¶ 58} It is undisputed that at the April 4, 2019 hearing where appellant was found in contempt of court he clearly articulated that such a finding would cause him to lose his employment. It is also undisputed that on November 25, 2020, this court reversed that contempt finding. *FitzGerald*, 6th Dist. Wood Nos. WD-19-027, WD-19-074, 2020-Ohio-5442.

{¶ 59} During trial, appellant was questioned at length about his efforts to obtain employment. He indicated that he intended to hire a head-hunter. Appellant stated that he looked at two jobs but did not apply for the positions because the trial was "consuming" his attention. Appellant further stated that he has limited his search to Northwest Ohio to remain close to his children.

{¶ 60} Appellant also testified that he applied for and was granted FMLA leave from April 11, 2019, through July 11, 2019 when he would then use accrued vacation

22.

time and his employment would then be terminated. Appellant further acknowledged that his employer would not contest an application for unemployment compensation.

{¶ 61} Reviewing the record of the proceedings and, particularly, appellant's testimony regarding his feeble attempts at finding employment, we cannot say that the trial court abused its discretion by finding that appellant was voluntarily underemployed. Appellant's fourth assignment of error is not well-taken.

{¶ 62} Appellant's fifth assignment of error challenges the court's division of marital assets. Appellant asserts that the court failed to state the basis for its unequal property division in favor of appellee and that it is not supported by the record. We first note that in dividing martial property and debt, the trial court is afforded broad discretion. *Buck v. Buck*, 2018-Ohio-3704, 119 N.E.3d 934, ¶ 35 (6th Dist.), citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). Further, "'[a]n unequal property division does not, standing alone, amount to an abuse of discretion.'" *Id.*, quoting *Enriquez v. Enriquez*, 6th Dist. Lucas No. L-94-252, 1995 WL 803441, *7 (Dec. 8, 1995).

{¶ 63} In making its property division, the trial court first noted:

> The law, the length of the marriage and each party's contributions to the marital estate would support an equal division of the marital estate. This, however, is not the typical case. Mrs. FitzGerald is requesting a disproportional property division in lieu of spousal support. Taking into account the factors of their case, including the likelihood that Mr.

23.

FitzGerald would become employed and pay spousal support, that request is reasonable, appropriate and equitable.

{¶ 64} Notably, and as stated above, the court then awarded appellee 70 percent of the proceeds from the sale of the marital residence, 70 percent of the parties combined retirement accounts, and ordered that "each party shall solely be responsible for any credit card debt they currently have in their respective names * * *."

{¶ 65} Reviewing the November 14, 2019 and March 2, 2020 decisions of the trial court, it is apparent that the court carefully reviewed the testimony of the parties and the financial documents. We cannot find that the unequal distribution, especially in light of the length of the marriage and decision to forego a request for spousal support in consideration whereof, was an abuse of the court's discretion. Appellant's fifth assignment of error it not well-taken.

{¶ 66} Appellant's sixth and final assignment of error in case No. WD-20-026, is that the trial court erred in awarding appellee's request for attorney fees. Pursuant to R.C. 3105.73(A)

a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

{¶ 67} An award of attorney fees must be fair, equitable, and serve the ends of justice. *Garritano v. Pacella*, 6th Dist. Lucas No. L-07-1171, 2009-Ohio-2928, ¶ 101, citing *Bowen v. Bowen*, 132 Ohio App.3d 616, 642, 725 N.E.2d 1165 (9th Dist.1999). A trial court's award of attorney fees will be reversed only if the court abused its discretion. *Id.*

{¶ 68} Appellant contends that the court erroneously ordered him to pay nearly all of appellee's attorney fees especially in light of the fact that appellee only requested that she be awarded 70 percent. Appellee asserts that the trial court's decision clearly states and supports its reasons for the award.

{¶ 69} In its November 14, 2019 decision, the court explained at length its reasons for awarding attorney fees stating, in part:

> To begin the litigation, the defendant brought a civil suit against the plaintiff. After taking hours of depositions and causing the plaintiff to incur time and legal expense, it became obvious that his case was frivolous and defendant dismissed his complaint.
>
> * * *.
>
> The defendant was the cause of numerous discovery disputes. Perhaps the most outrageous of which were his requests of the guardian ad litem. He requested discovery of privileged and protected matters. He engaged in a discovery dispute with the plaintiff's employer and belittled and demeaned their attorney. His discovery disputes with the plaintiff are

numerous and one of the worst of those was his repeated failure to cooperate as ordered in the filing of federal tax returns.

{¶ 70} The court noted that appellant failed to follow various court orders including improperly taking money from an account, purchasing a vehicle without prior court approval, orders relating to curbside child pick-up, and orders regarding the filing of federal tax returns.  The court further stated that appellant refused to cooperate with the child custody expert, failed to update financial forms, he repeatedly misinterpreted court orders, he attempted to relitigate already-decided issues, he was argumentative and abusive, and he continually delayed the proceedings.

{¶ 71} Upon review of the record in this case and even considering this court's November 25, 2020 decision and judgment reversing the contempt findings, we find ample support for the award.  Accordingly, we cannot say that the trial court's attorney fee award was an abuse of its discretion.  Appellant's sixth assignment of error is not well-taken.

**Appeal Bond**

{¶ 72} Appellant's assignment of error raised in case No. WD-20-048 argues that the trial court erroneously ordered him to post a supersedeas bond in the sum of $731,308 in conjunction with the denial of his request for a stay from the final divorce decree entered on March 2, 2020.  Appellant asserts that the trial court's April 24, 2020 denial of his motion for a stay, combined with this court's September 30, 2020 denial of his motion

26.

to stay the execution of judgment evidence that the court improperly, sua sponte, ordered that he post an appeal bond.

{¶ 73} On April 6, 2020, appellant filed a motion pursuant to Civ.R. 62(B) to stay execution of the court's March 2, 2020 judgment. Appellant further requested that the court waive the imposition of a supersedeas bond standing that it would be "inequitable."

{¶ 74} On April 15, 2020, appellee opposed the motion noting first that appellant failed to make the showings required for a stay. Alternatively, appellee requested that if the court granted the motion for stay it order the posting of a supersedeas bond in an amount of either the total sum of the award, $731,308, $1 million, or double the amount awarded to appellee.

{¶ 75} The trial court denied appellant's motion on April 24, 2020. The court found that due to appellant's failure to follow court orders and financial misconduct it was denying the stay and ordering an appeal bond set at $731,308. Appellant's motion for reconsideration of the bond order, which the court construed as a Civ.R. 60(B) motion, was denied on May 26, 2020.

{¶ 76} This court also denied appellant's motion for stay on appeal and appellant's request for an appointment of a receiver in lieu of posting a bond. In rendering our decision we noted:

> [T]he imposition of an appeal bond is unwarranted when the stay is
> not granted. The trial court's injunction remains to protect the retirement
> plan assets from being depleted, with a supersedeas bond remaining

27.

available to appellant as a means to automatically stay execution of the trial court's judgment.

{¶ 77} Reviewing the proceeding below, we disagree with appellant's characterization that the court, sua sponte, ordered that a supersedeas bond be posted. In its April 24, 2020 judgment, the court denied appellant's motion to stay without posting a bond. Although unnecessary at that point and obviously a subsequent source of confusion, the court granted appellee's alternative request that a bond of $731,308 be posted. Once appellant posted the amount, already "preapproved" by the court, it would act to automatically stay the execution of the court's judgment. Civ.R. 62(B); R.C. 2505.09.

{¶ 78} Upon review, we cannot say that the trial court abused its discretion in denying appellant's motion for stay without posting a bond. Or, conversely, requiring a bond be posted to secure a stay. Appellant's assignment of error is not well-taken.

{¶ 79} On consideration whereof, we find that the November 14, 2019, and March 2 and April 24, 2020 judgments of the Wood County Court of Common Pleas, Domestic Relations Division, are affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                           _____
                                                  JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.                             _____
CONCUR.                                                    JUDGE

                                                  _____
                                                  JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.